1058

## The Journal of Living Publishing Corporation,[1] Petitioner, v. Commissioner of Internal Revenue, Respondent.

Docket No. 3428. Promulgated July 4, 1944.

*Maurice A. Haas, C. P. A.*, for the petitioner.
*Francis X. Gallagher, Esq.*, for the respondent.

---

[1] Originally entered as a memorandum opinion of the same date.

## OPINION.

ARUNDELL, *Judge*: The petitioner contends that the entire amount claimed by it as circulation and promotion expenses is deductible as an ordinary and necessary business expense, under section 23 (a) (1) of the Internal Revenue Code. The respondent contends that $3,617.47 of the total claimed represents a capital expenditure and hence is not deductible.

The circulation of a magazine or newspaper is an intangible capital asset which must be continually supported by bringing in new subscriptions to replace those which are continually expiring. The cost of so supporting the circulation is an ordinary and necessary business expense, but the cost of building up or establishing a circulation structure is a capital expenditure, and is not deductible in determining the publisher's taxable income. *Perkins Bros. Co.* v. *Commissioner*, 78 Fed. (2d) 152; *Public Opinion Publishing Co.* v. *Jensen*, 76 Fed. (2d) 494; *Successful Farming Publishing Co.*, 23 B. T. A. 150; affd. sub nom. *Meredith Publishing Co.* v. *Commissioner*, 64 Fed. (2d) 890; certiorari denied, 290 U. S. 646. If the expenditure is made for the purpose of supporting the circulation structure, the incidental fact that the number of subscribers is thereby increased will not make it a capital expenditure. It is the character of the expenditure which is determinative and that is dependent upon its general purpose, rather than upon an incidental result. *Perkins Bros. Co.* v. *Commissioner, supra.*

The petitioner contends that it was not engaged in an effort to increase the circulation structure of its magazine, but was attempting to support it by bringing in new subscriptions to replace those which had been lost, and that the large increase in its circulation was simply an unexpected result of its effort to restore its circulation to its former level. It relies on *Perkins Bros. Co.* v. *Commissioner, supra*, in support of its contention.

In that case the petitioner was the publisher of a newspaper having a circulation of 55,000. With this circulation, the petitioner's territory was "saturated," that is, its circulation had reached a point where it was not necessary or desirable to increase the circulation. The evidence showed without dispute that the petitioner did not attempt to increase its circulation, but carried on only the normal business of soliciting subscriptions for the purpose of keeping up the circulation structure which had already been established. There was testimony to the effect that had it been impossible to get any additional circula-

tion whatever, it would still have been necessary to expend all that was paid out to support its established circulation structure. During the years in controversy, the petitioner's circulation increased in the amount of 5,521 and 3,765, respectively. The court held that the expenditures were incurred for the purpose of maintaining the petitioner's circulation structure, and that the increase was merely an incidental result.

In the present case, there is no evidence that the circulation of the petitioner's magazine had reached a point beyond which it would be neither desirable nor profitable to go. Indeed, it appears that the income from the magazine subscriptions constituted a large part of the petitioner's entire income for the year, and that a larger circulation would be desirable from a financial viewpoint.

Furthermore, the petitioner has not shown by adequate proof that the total amount expended by it during the taxable year was necessary to support its existing circulation structure. The evidence shows that at the end of its fiscal year 1939 the petitioner had 31,800 subscribers and that during that year it spent $13,124.22 for circulation and promotion expenses. By September 30, 1939, the number of subscribers had dropped to 18,901. As a result of an intensified effort to get back the subscribers who had been lost, the petitioner succeeded in restoring the circulation structure to 29,421 as of May 31, 1940, or 2,379 less than it had been at the close of the previous year, at an increased cost of only $198. During the year in controversy, however, the petitioner's expenses rose from $13,322.22 to $17,904.45, an increase of 34 percent, while its circulation rose from 29,421 to 46,726, a gain of 58 percent. The petitioner has offered us no evidence to show why such a large increase in its expenditures was necessary to support its circulation structure. It is certain that as a result of its increased activities and expense the petitioner acquired a large and valuable increase in its capital assets, and that its earning power was thereby increased. In the absence of further proof, we cannot say that a part, at least, of this expenditure was not made for the purpose of so increasing the circulation structure.

While a part of the petitioner's expenditure was thus used to build up its circulation structure and is a capital expenditure, the balance is properly deductible as an expense incurred in supporting its circulation structure. The cost of securing new subscriptions should be allocated between expense and capital according to the number of subscriptions required to replace those lost during the year and the number by which the circulation structure was increased. *Successful Farming Publishing Co.*, *supra*. The respondent has done this in his determination of deficiency. He has allowed the petitioner the sum of $14,286.98 as representing the cost of supporting its circulation

structure, or almost $1,000 more than it spent in the preceding year for the same purpose. The balance he determined to be a capital expenditure, and, on the record, we can not say that he was in error in so doing. His determination must accordingly be sustained.

*Decision will be entered for the respondent.*